KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) | CASE NO. CV ___11-203___ |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| ROOFTOP REAL ESTATE MANAGEMENT, INC., MARTIN C. GREALISH, TERI L. GREALISH, and H. PAUL HEYDE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of

action against the Defendants Rooftop Real Estate Management, Inc., Martin C. Grealish, Teri L.

Grealish, and H. Paul Heyde, states and alleges as follows:

VERIFIED COMPLAINT AND          1
DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.   This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief and damages on the following bases:

a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604(f);

ii.  Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604(f);

iii.  Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f);

iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c); and

v. Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Fair Housing Regulations, 24 C.F.R. §100 et seq.

c.  Negligence.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Chubbuck, County of Bannock, State of Idaho and the City of Ammon, County of Bonneville, State of Idaho.

VERIFIED COMPLAINT AND                    2
DEMAND FOR JURY TRIAL

<u>PARTIES</u>

3.   The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "Plaintiff" or

"IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with

its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its

mission is to advance equal access to housing for all persons without regard to race, color, sex,

religion, national origin, familial status, or disability (the term "handicap", as that term is used

and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff

serves housing consumers through, among other things, education on the fair housing laws and

assistance with complaints.

4.   The Defendant Rooftop Real Estate Management, Inc. (hereinafter "Defendant

Rooftop"), is a business organized under the laws and doing business in the State of Idaho.  Its

principal place of business is 3456 East 17th Street, Suite 210, Ammon, Idaho 83406.  The

Defendant Rooftop is the property management company with regards to 442 Raven Way,

Apartment B, Chubbuck, Idaho 83202 (hereinafter "Raven Way Property"), an apartment in a

multifamily building located in Chubbuck, Idaho.  The Defendant Rooftop is also the property

management company with regards to 1515 Stevens Street, Ammon, Idaho 83401 (hereinafter

"Stevens Street Property"), a townhouse located in Ammon, Idaho.  At all times material hereto,

the Defendant Rooftop acted as the agent for the Defendant Martin C. Grealish, the Defendant

Teri L. Grealish, and the Defendant H. Paul Heyde.

5.   The Defendants Martin C. Grealish and Teri L. Grealish (hereinafter "Defendants

Grealish") are the owners of record of the Raven Way Property, according to the official records

of the Bannock County Assessor's Office.  The official records indicate that said Defendants

reside at 44 Coronado Avenue, San Carlos, California 94070.

VERIFIED COMPLAINT AND                        3
DEMAND FOR JURY TRIAL

6.  The Defendant H. Paul Heyde (hereinafter "Defendant Heyde") is the owner of record

of the Stevens Street Property, according to the official records of the Bonneville County

Assessor's Office.  The official records indicate that said Defendant resides at 311 Alder Street,

Arroyo Grande, California 93420.

<u>STANDING OF PLAINTIFF</u>

7.  The Plaintiff has suffered damages as the result of the Defendants' actions and

omissions, including the diversion of the Plaintiff's past and future resources, lost economic

opportunity, and the frustration of the Plaintiff's mission.

8.  The Plaintiff's mission, as described above, has been frustrated by the Defendants'

practices because the Defendants' violations of the FHA communicate to housing consumers and

housing providers that discriminatory practices are permissible and that correctional remedies are

not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues

and to advance equal access to housing.

9.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the

FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State

of Idaho.

10.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to

devote significant resources to identify, investigate, document and take action to correct the

Defendants' violations of the FHA, including but not limited to the incursion of litigation

expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-

related activities, including fair housing education and enforcement activities throughout the

State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur

additional expenses in the future to counteract the lingering effects of the Defendants' violations

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

4

of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

11.   As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

12.   Furthermore, at least one of the Plaintiff's members would have standing to sue in their own right, the interests the suit seeks to vindicate are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  The mission of the Plaintiff, as described above, expresses the collective views and protects the collective interests of its members and the primary reason that the Plaintiff's members have joined is to create an effective vehicle for vindicating interests that they share with others.  Therefore, the Plaintiff also has associational or representational standing to bring this action before this Court.

## GENERAL ALLEGATIONS

13.   The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-12 above.

14.   The Plaintiff conducted telephonic testing of the Defendant Rooftop on or about October 15 and 16, 2009 with regards to an advertisement for an available rental property. During the course of said testing, the Defendant Rooftop indicated that it charges a $250.00 deposit on service animals.

15.   R.A. is handicapped, as that term is defined at 42 U.S.C. §3602(h).  As a result of R.A.'s handicap, she requires the assistance of a service animal.  R.A.'s service animal is a dog.

VERIFIED COMPLAINT AND           5
DEMAND FOR JURY TRIAL

16.  On or about the 7th day of October, 2008, R.A. entered into a lease agreement with the Defendant Rooftop to rent the Raven Way Property.  At all times material hereto with regards to the Raven Way Property, the Defendant Rooftop was acting as the agent for the Defendants Grealish.

17.  On or about the 27th day of July, 2009, R.A. acquired a service animal to assist with her disability, which was approved by the Defendant Rooftop's on-site property manager with regards to the Raven Way Property.

18.  On or about the 20th day of March, 2010, the Defendant Rooftop's on-site property manager informed R.A. that she was leaving her position and that the new on-site property manager was not going to allow R.A. to keep her service animal.  R.A. obtained a note from her treating physician dated the 7th day of April, 2010 verifying the need for the service animal.

19.  R.A. received a lease termination notice from Thekla Schenk, the Defendant Rooftop's new on-site property manager, dated the 20th day of April, 2010.  Said notice stated that Defendant Rooftop is terminating R.A.'s lease as the result of the presence of her dog.

20.  As a result of the lease termination notice received from the Defendant Rooftop's on-site property manager, R.A. relocated her service animal to another residence located elsewhere and R.A. was therefore denied the use of her service animal for several months.

21.  At all times material hereto, Thekla Schenk was acting as the agent for the Defendant Rooftop and the Defendants Grealish.

22.  In response to the lease termination notice, R.A. submitted to the Defendant Rooftop a reasonable accommodation request, which included a letter from her treating physician verifying the need for the service animal dated the 7th day of April, 2010.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

23. R.A. received a letter dated the 22nd day of June, 2009 from Jonathan W. Harris, the attorney for the Defendant Rooftop. Said letter stated that "[a]t this time your request for an accommodation is denied pending investigation to gather additional and more specific information." Said letter directed R.A. to "provide a more detailed explanation of your alleged disability. . . . To that end please provide medical or counseling records which you believe support your position." Said letter also required R.A. to provide details concerning the training of her service animal. Finally, said letter stated that "[u]pon receiving the information my clients will make a final decision about whether to grant your request for accommodation."

24. At all times material hereto, Jonathan W. Harris was acting as the agent for the Defendant Rooftop and the Defendants Grealish.

25. R.A. submitted a letter to Mr. Harris dated the 30th day of June, 2010 containing details concerning the characteristics of the service animal and how she intends to care of the service animal.

26. Mr. Harris sent a letter to R.A. dated the 8th day of July, 2010 approving R.A.'s request for a reasonable accommodation to have the service animal. However, the Defendant Rooftop and the Defendants Grealish imposed a deposit on the animal in the amount of $250.00. As a result of such requirement, which does not comply with the FHA, R.A. was denied a reasonable accommodation.

27. On or about the 8th day of July, 2010, R.A. filed a complaint with the Plaintiff regarding the deposit on her service animal required by the Defendant Rooftop and the Defendants Grealish, and the denial of her request for a reasonable accommodation.

28. As the result of the complaint filed by R.A., the Plaintiff began an investigation of this matter.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

7

29.  T.T. is handicapped, as that term is defined at 42 U.S.C. §3602(h).  As a result of T.T.'s handicap, she requires the assistance of a service animal.  T.T.'s service animal is a dog.

30.  On or about the 20th day of February, 2011, T.T. applied for the rental of the Stevens Street Property with the Defendant Rooftop.  At all times material hereto with regards to the Stevens Street Property, Defendant Rooftop was acting as the agent for the Defendant Heyde.

31.  Upon application for the Stevens Street Property, T.T. paid a $100.00 deposit for said property.  T.T. informed the agent for the Defendant Rooftop that she has a service animal prescribed by her treating physician.  The agent for the Defendant Rooftop told T.T. that "they do not accept therapy dogs" and that service animals must be trained and licensed.  As the result of such requirements, which do not comply with the FHA, T.T. was denied a reasonable accommodation.

32.  On or about the 21st day of February, 2011, T.T. returned to the office of the Defendant Rooftop and informed the agent that she could not reside at the Stevens Street Property because of the Defendant Rooftop's training requirements for service animals.  The Defendant Rooftop refused to refund the $100.00 deposit that had been paid by T.T.

33.  On or about the 7th day of March, 2011, T.T. filed a complaint with the Plaintiff regarding the service animal training requirements imposed by the Defendant Rooftop and the denial of her request for a reasonable accommodation.

34.  As the result of the complaint filed by T.T., the Plaintiff began an investigation of this matter.

35.  The Plaintiff and T.T. filed administrative complaints with the United States Department of Housing and Urban Development (hereinafter "HUD") pursuant to 42 U.S.C. §3610.  Said administrative complaints currently remain pending with HUD.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

36.  Neither the Secretary of HUD, a state agency nor a local agency have obtained a conciliation agreement with the consent of any of the aggrieved persons at issue herein. Furthermore, no administrative law judge has commenced a hearing on the record pursuant to the FHA with respect to any matter at issue herein.

37.  Due to the ongoing nature of the Defendants' conduct, said conduct constitutes a continuing violation.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

38.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-37 above.

39.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

40.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".  42 U.S.C. §3604(f)(2).

41.  The Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford R.A. and T.T. equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).

42.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap".  42 U.S.C. §3604(c).

43.  The Defendants have engaged in interference in the exercise or enjoyment of rights granted the victims by 42 U.S.C. §§3603 and 3604.  42 U.S.C. §3617.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

9

44.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

COUNT TWO—NEGLIGENCE

45.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-44 above.

46.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff, R.A. and T.T.

47.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff, R.A. and T.T.

48.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff, R.A. and T.T. by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq., as well as its implementing regulations provided at 24 C.F.R. §100 et seq.

DAMAGES

49.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-48 above.

50.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

51.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

52.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $15,374.84, which continue to accrue.

53.  The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $10,000.00.

54.  The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

55.  The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $15,374.84.

56.  In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, including R.A. and T.T.

57.  Said victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

58.  All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

59.  A Victims' Compensation Fund should be established in an amount to be determined to adequately compensate identified and as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

11

a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.  The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 2500

VERIFIED COMPLAINT AND          12
DEMAND FOR JURY TRIAL

Kootenai Street, Boise, Idaho 83705; (2) Co-Ad, Inc., 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 124 East Third Street, Moscow, Idaho 83843; and (4) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e. Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f. Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g. Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

h.  After receiving the Defendants' refutation, if any, the Plaintiff shall submit its
final recommendations to the Court for approval, together with a copy of the
declarations and any additional information submitted by the Defendants.  When
the Court issues an order approving or changing the Plaintiff's proposed
distribution of funds for aggrieved persons, the Defendants shall, within ten (10)
days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved
persons in the amounts approved by the Court.  In no event shall the aggregate of
all such checks exceed the sum of the Victims' Compensation Fund, including
accrued interest and after deducting compensation to the Plaintiff as described
above.  No aggrieved persons shall be paid until he or she has executed and
delivered to counsel for the Plaintiff a signed and notarized statement releasing
the Defendants from all claims related to the subject property.

i.  In the event that less than the total amount in the fund including interest is
distributed to aggrieved persons, the remaining funds shall be submitted to an
education fund to be drawn upon by the Plaintiff and other non-profit
organizations for purposes of educating housing consumers and providers on the
requirements of the Fair Housing Act.  Said education fund shall be administered
by Idaho Legal Aid Services, Inc..

j.  The Defendants shall permit the Plaintiff, upon reasonable notice, to review any
records that may facilitate its determinations regarding the claims of allegedly
aggrieved persons.

VERIFIED COMPLAINT AND                    14
DEMAND FOR JURY TRIAL

60.  The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined by the Court.

61.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

62.  The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

63.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Intermountain Fair Housing Council, Inc. prays that the Court enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $15,374.84, which continue to accrue;

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $10,000.00;

D.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

E.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $15,374.84;

F.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 59 above;

G.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined by the Court;

H.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

K.  That the Court order any further and additional relief as the interests of justice may require.

<u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this __6th__ day of _____May_____, 2011.

_____
/s/

KEN NAGY
ATTORNEY FOR PLAINTIFF

VERIFIED COMPLAINT AND                    16
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

RICHARD MABBUTT, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

/s/

_____

RICHARD MABBUTT

STATE OF I D A H O  )
                     : ss
County of ___Ada___ )

I, ___Tory Pearse_____, a Notary Public for said state, does hereby certify that on the __6th__ day of _____May_____, 2011, personally appeared before me RICHARD MABBUTT, Executive Director of the Intermountain Fair Housing Council, Inc., who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

    SEAL
  Tory Pearse
  Notary Public
  State of Idaho

/s/

_____
Notary Public in and for the State of ___Idaho_____
Residing at: __Boise, Idaho_____
My commission expires: __12/28/13_____

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

17

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

## APPENDIX A:

## PLAINTIFF'S MEMORANDUM OF DAMAGES

The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "Plaintiff") has

identified four categories of damages that it has suffered as the result of the Defendants' failure

to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Future

Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of

these categories of damages have been recognized and awarded by various courts to

organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff has incurred significant pre-litigation expenses as a result of the Defendants'

discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion

of resources.  The Plaintiff has sponsored training workshops in the Defendants' geographic

area, and has engaged in site monitoring, investigation, complaint preparation, counseling and

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

VERIFIED COMPLAINT AND　　　　　18
DEMAND FOR JURY TRIAL

other activities with regards to this matter.  As a result of these activities, it has incurred

expenses as follows:

    a.   Investigation and Counseling Costs:                $1,929.85

    b.   Educational efforts:                        $11,000.00

    c.   Cost of Deferred Actions:                  $1,182.99

    d.   <u>Litigation costs and fees (to date):            $1,262.00</u>

                  Total Past Diversion of Resources:   $15,374.84

Further litigation of these matters will result in an increase in the Plaintiff's diversion of

resources, as well as other damages.

### 2.  Future Diversion of Resources

The Plaintiff has an affirmative duty to ensure the Defendants' ongoing compliance with

the FHA, with regards to both the subject property as well as any future developments in which

the Defendants may participate.  Such monitoring activities include site visits, training of

Defendants and their employees and agents, counseling of victims, and testing.

The Plaintiff expects to incur the following expenses as a result of the current violations:

    a.  Future Advertising Costs:               $5,000.00

    b.  Cost of future training:                $2,000.00

    <u>c. Costs of Future Monitoring/Testing:       $3,000.00</u>

              Total Future Diversion of Resources:   $10,000.00

### 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the

property at issue herein, has caused the Plaintiff to divert limited resources and manpower away

from grant-writing activities.  The Plaintiff could reasonably expect to have obtained funding to

VERIFIED COMPLAINT AND        19
DEMAND FOR JURY TRIAL

sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the Defendants' actions

    a.  Loss of Funding:                            $1,000.00

### 4.  Frustration of Mission

       The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

       As a direct result of the Defendants' discriminatory actions, the Plaintiff's mission of furthering fair housing has been significantly frustrated, and the Plaintiff has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

       Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff in guaranteeing fair housing to all residents of the state.  The Plaintiff has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with the FHA.

       The Plaintiff measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

    a.  Frustration of Mission                         $15,374.84

VERIFIED COMPLAINT AND          20
DEMAND FOR JURY TRIAL

## **TOTAL DAMAGES**

The Plaintiff calculates its total damages in this proceeding as follows:

1.  Out-of Pocket Expenses and Past Diversion of Resources:     $15,374.84

2.  Future Diversion of Resources:     $10,000.00

3.   Lost Economic Opportunity:     $1,000.00

4.   Frustration of Mission:     $15,374.84

Total Damages:     $41,749.68

## APPENDIX B:

## CALCULATION OF VICTIMS' COMPENSATION FUND

## I.  INTRODUCTION

In addition to the damages incurred by the Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "Plaintiff"), a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002

VERIFIED COMPLAINT AND                    22
DEMAND FOR JURY TRIAL

establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated. The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are managed by the Defendants is currently unknown.

B.  The number of months that the Defendants has managed property that is subject to the requirements of the Fair Housing Act is currently unknown.

C.  On average, each of the units could be expected to be rented to a new tenant every twelve months.

D.  The U.S. Census Bureau Population Survey of 2000 indicates that, for the state of Idaho, persons (age 5+) with a disability comprised 13.0% of the population.

E.  The amount of damages awarded to victims of disability discrimination in violation of the Fair Housing Act has been $10,000.00 or more.

F.  The Plaintiff is the organization best equipped and situated to administer the fund.

G.  The Plaintiff should be compensated at its operational rate of $45.88 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of $1,000.00 per identified victim.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

23

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

1. <u>Step One: Estimated Compensation for Victims.</u>  The amount of funds that can reasonably be expected to be necessary to compensate victims of discrimination by the Defendants, as they become identified, should be calculated as follows:

<u>First</u>, the total number of months that the Defendants have managed the subject property is divided by the estimated average duration of tenancy in months, and multiplied by the total number of units at the subject property.  This represents the total number of tenants or applicants at the subject property over the relevant time period.

<u>Second</u>, the above product is multiplied by 13.0% to determine the number of tenants or applicants who faced discrimination based on disability.

<u>Third</u>, the sum from the calculation described above is multiplied by a reasonable damage award to each Victim (which is $10,000), arriving at the total estimated compensation for Victims.

2. <u>Step Two: Estimated Compensation for the Fund Administrator.</u>  The amount of funds that can reasonably be expected to be necessary to compensate the fund administrator for work performed in administering the Victim's Compensation Fund should be calculated as follows:

The estimated total number of Victims (as calculated in Step One above) is multiplied by the number of hours necessary to administer the fund per identified Victim (which is 3), times the Plaintiff's operational rate (which is $45.88 per hour).

3. <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator as out-of-pocket expenses in administering the Victims' Compensation Fund should be calculated as follows:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

24

The estimated total number of Victims (as calculated in Step One above) is multiplied by the amount that the Plaintiff can be expected to incur in out-of-pocket costs in identifying and compensating each identified Victim (which is $1,000).

4. <u>Step Four</u>.  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three, as set forth above. Applying the underlying principles, as described above, and the applicable figures, as set forth above, the Victims' Compensation Fund should be established in an amount to be determined after all applicable figures are acquired from the Defendants through discovery in order to compensate identified and as-of-yet unidentified victims.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho